17-2113 Land and Buildings Investment Management, LLC v. Taubman Centers, Inc., et al. Oral argument, 15 minutes per side. Mr. Landau for the appellant. May it please the Court. I'm Chris Landau and I'm here today for Appellant Land and Buildings. I'd like to reserve three minutes for rebuttal. This case involves both a contract claim and a Section 14a claim that turned on the interpretation of a corporate charter. That charter requires the company's Board of Directors to determine in good faith the market price of stock that's not publicly traded. Defendants take the position, and the District Court agreed, that the market price of such stock is necessarily the same as its liquidation value,  or its conversion value, which the charter sets at $14,000 to one share of common stock. That's wrong as a matter of law. The purely nominal liquidation and conversion values have no bearing here because no one is liquidating or converting the preferred stock. Rather, the issue here is the capital M, capital P market price of that stock, and nothing in the charter purports to set that price. To the contrary, the charter specifically declines to set the market price in contrast to the conversion and liquidation values, and assigns that task to the company's board. Why is the market value the issue if the stock valuation is set forth in the articles of incorporation? How do we get into thinking that we're trying to determine market value? That is precisely the point, Judge Clay. That, with all respect, is exactly the error into which the District Court failed in equating the market price, which is set forth on page ID 59. That's really the critical provision here because the ownership limit is set in terms of value. It's 8.23% of the value of the capital stock. How would you purport to determine the market price then? Well, the charter assigns that price to the board, and the board has to make a good-faith determination. Again, we're talking about shares that are not publicly traded. So they have to look at when these shares give you a 30% control over the value of the company, it has some market price that is different. A market price for something that can't be traded on a market.  The board must make this determination in good faith. The problem here, and this I think goes back to Judge Clay's question, which is absolutely the critical point here, the board can't simply say that the market price is necessarily the same as the nominal liquidation or conversion values because that's not a determination of a market price. It is certainly true, Your Honor, that there may be difficulties,  if we live to fight another day, which we should, is to prove that the board did not make a good-faith determination. But just to go back to Judge... Did you allege in your complaint, it seems to me that a necessary step here, you say they didn't make a good-faith determination, but you didn't allege in your complaint that they didn't make a good-faith determination, did you? Your Honor, we absolutely said in our complaint that there was... The district court dinged us in footnote 2. The district court says, well, you didn't allege there was lack of good faith. The basic problem is there was never a determination of market price by the board because the board simply assumed, and this was their legal error, I think, that the market price was necessarily the same as the nominal conversion or liquidation value. On that theory, should they have met once a week or once a month or once a year and determined that market price? That is, you seem to say they had an obligation not just to do it in response to something, but to do it all the time to be sure they stayed within the ownership limit. Your Honor, the charter answers that question. It says on the relevant date. It says market price means, and again, remember, the charter tells us what the liquidation value and the conversion value are, but it doesn't tell us what market price is. It assigns that task to the board in good faith. And it says, with respect to any class or shares of regular capital stock, if such shares are not then traded on any exchange, then the market price of such series or class of shares on the relevant date. Why is it the relevant date? Well, the date is a date of a transfer or the date of a valuation. Every time shares change hands. Any time the valuation becomes an issue. In other words, certainly, Your Honor, it's a relevant date when they're submitting forms to the SEC saying what the valuation here. This is our problem underlying our proxy argument that they said to the SEC that once. The SEC has never said this is a problem, is it? They have not, Your Honor. Don't they assess it or audit it or in some way oversee it? Your Honor, the government has enforcement discretion. They have not come after this, but that doesn't mean that everything is okay. They certainly have not blessed this. But to go back, I think, to Judge Clay to your question, which I think is the central question here. If there's nothing else I get across today, it's I'd like to underscore that there isn't one general valuation formula, which I think is the trap that the district court fell into. Why would we get into the issue of valuation under these facts in this case? You're claiming that the value of the stock is a factual issue, as I understand. But is that really true if the board has the authority to set the value of the stock and the articles of incorporation determines what the values of the stock is going to be? So, you know, if there's no indication of bad faith dealings here, and I don't see any explication of that in the briefs. What is it that we're arguing about? If I could try to clarify that, Your Honor. Again, the charter does not set market price. It tells the board to determine that in good faith. So that's a very important point that we come in. That gives the board the authority to set the stock price. It can't do so in bad faith, but I don't see in these papers any indication of exercise of bad faith. What's the bad faith that's going on here? Let me make that point clear, Your Honor. If you look at paragraphs 28 and 30 of the amended complaint, we say that the company is recognizing that these shares have a value, these voting shares of preferred stock. It's not that the shares have a value. It's not being recognized. But that's contrary to the value that's been attached by the board, and the board is empowered to determine the value. Your Honor, again, to be clear, the board. The notion that there's a different value that. The board, the charter says that the board must make that determination in good faith. The board, we have alleged in our complaint facts that the board has recognized, that the company has recognized that these shares have value, and I quote here from paragraph 28, commensurate with the economic interests in the underlying partnership assets. In other words, what happened here is that the Taubmans have a 30% control or 30% ownership of the underlying assets that are owned by the company. And they got the Series B preferred stock. And again, I'm quoting what they're saying. The Series B preferred shares are a class of voting shares that give the Taubman family the ability to vote, commensurate with their economic interest in the partnership, and ensure one share, one unit, one vote. They were created in 1998 as a result of the restructuring of the partnership. Is there a valuation theory that each share should be valued at the partnership unit price? That is not only our fundamental theory. It is theirs because they're the ones, and we quote this in paragraph. I just want to stick to yours. No, that is the theory. I'm not asking about the proof behind it. No, no. That is our theory that is in the complaint, and we actually allege that in paragraph 30 of the complaint. In effect, their valuation theory is what it says in the charter, and since there is no market, they stick to that, okay? Well, it's what it says. Counsel, let me finish. I'm sorry, Your Honor. Your valuation theory is it should be one-to-one with the partnership. Now, there are many possibilities. I take it certain economics textbooks would say corporate control, but less than a majority is worth something, but who knows what, right? Correct. If it were 51%, we have some theory about it. Correct. Now, here your underlying argument is there was an election and you lost, that if the electorate had been different, you would have won, but it wasn't a rigged election. That is, you could have won if your theory was good enough to attract more votes. We did win the non-taupe. I understand that, counsel. So you got XDX percent, more than 50 of these other shares. If you had gotten 70% of these other shares, you would have won. That's absolutely correct. All right, so then how does that give us, though, any kind of way of assessing a price other than what's in the charter? Well, it's not your job nor our job to assess the value. It's the board's job. You have given a valuation theory. That is, if your valuation theory isn't valid legally, then where do we go? Our valuation theory is something we put forth in the complaint because our task is to challenge the good faith determination by the board. And what we're saying is we think this should be the valuation theory. Even if our valuation theory is not correct, there may be different valuation theories. At least we should live on remand to be able to say that the board's valuation theory, which, again, is there's been no determination by the board other than to look to the conversion liquidation values. But now you concede. So your brief sort of suggests that there was no determination by the board. Right. Now you have backed off that a little. Well, Your Honor, no, we have two arguments. The first is that we don't see any determination that is other than an automatic assumption that the liquidation or conversion values are necessarily the same as the market price. We don't think that qualifies as a determination. So we have two steps of our argument. But even if we're wrong on that and there were a determination, we're entitled to challenge whether that is a good faith determination given that the board is simultaneously saying these voting shares reflect the value that's commensurate with the Taliban's interest in the underlying assets. It's like, for instance, if you have an airplane voucher, that might have a cash surrender value of a penny. But that doesn't mean that its economic value is only a penny. It might allow you to fly roundtrip to Hawaii. The question isn't what's its economic value. The question is what's its market value. Correct. What can you sell it for? Correct. I don't think legally I can sell my Delta Airlines voucher. I mean, if it is restricted, I mean, maybe some you can trade. I don't know. But if it is restricted such that I can only sell it to people who meet certain criteria and that turns out to be just my brothers and sisters, then it doesn't really have a market value. But put it this way. Our point is only that the district court fell into error in assuming that the market price, capital M, capital P that is set forth here, is necessarily the same as the purely nominal conversion and liquidation values. And that error led the district court to say, well, your theory doesn't make any sense because how can it not be in good faith if this is the valuation formula that sets forth in the charter? And our point is the valuation formula in the charter is for the liquidation or the conversion of shares. That's like the cash surrender value of that ticket. Can I ask one more question? Oh, I'm sorry. I need to ask you if I can ask one more question, not him. Is there a – now I lost my train of thought because I was asking permission. I'm sure it couldn't have been that important. While Judge Larson remembers what she was going to ask you, let me ask you one more thing. Is your argument in part that as a matter of law, voting rights have to have some relationship to market value? Are you arguing that as a legal proposition? Our argument is only that the charter itself on its face, Your Honor, draws a distinction between a determination of capital M, capital P market price. That's a determination that's set for the board. What the charter also does is it sets the conversion liquidation value. The charter itself sets that. I wasn't asking you about the charter and the facts of this case. I'm sorry. I was asking you whether as a matter of law you are maintaining the position that voting rights have to have some relationship to market value. You're not giving me an answer. Oh, I'm sorry, Your Honor. The charter itself requires – I'm not asking about the charter. I'm just asking about a legal proposition as to whether that's your position here. Because I think the problem is, Your Honor, that that can always depend on the charter. The charter can assign voting rights. I don't think there's a general free-floating legal proposition that voting rights always have to have particular value X or Y. That can be set. That's what I thought was the case, but I didn't want to misunderstand. No, no. But I think our position is totally consistent with that because our position is that the charter here, all the board has to do is make a good faith determination. We don't think there's been a determination. We certainly think at the 12B6 stage, we have alleged enough facts that give rise to an inference that any such determination, assuming it occurred, which we, of course, don't think it does, was not in good faith because the charter is simultaneously saying these voting rights are really important because they're meant to reflect the talbans' interests in the underlying ownership on the underlying assets, which is a 30 percent ownership. So they're talking out of both sides of their mouth. All right. Can I ask my question that I remembered? Absolutely. Is there a distinction in your mind between a good faith determination and the right determination? Because it seems to me like you're saying, look, they just assumed that this — let's say we get past step one. Did they make a determination? Let's say the answer to that is yes. They made a determination that it's the liquidation, what you would call the liquidation price. In your view, that's wrong. That's not the right answer. But is there a difference between it being right and it being in good faith? Yes, Your Honor. And all we're asking is that we enforce the charter's terms that it be in good faith. I think — So what was the bad faith? They made a decision. The decision was wrong. We have — this is, again, at 12B6. We have alleged that these are the same folks who are saying that these voting rights have value commensurate with the talbans' ownership of the underlying assets. You can't at the same time say these are really important things and say they have purely nominal value. That's based on what's on the website? Not only what's on the website but on their statement to the SEC. This is in the solicitation materials where — I think this is in paragraph 28. If you look, there's a little box that we got, and this is material that's submitted to the SEC, where they explain that these shares — Are you getting to saying this is the Staple II theory? It is. The Staple II theory is one of the reasons that we're saying that this is not good faith. That it means or even says, usually not as a matter of law, Staple II, then that theory would fall, would it not? Again, Staple II is one piece of the facts that we have alleged in our complaint at 12B6. That's enough to show the lack of good faith. We have other ones that I could refer you. If you look at — we call it — in the complaint, we say that this is an artifice. We say that the talbans are gaming the system in paragraph 35, that they engage in want and willful misconduct. I think if you look at paragraphs 3, 7 — They're bad guys. I get that feeling. And you do not need to decide for these purposes whether we're right or wrong on that. This is a 12B6 appeal. And so all we're asking you to decide — the district court in footnote 2 said, oh, well, you didn't say bad faith. Our only point is you don't have to use magic words. Again, our position is that there was no determination and that we have more than amply — if you believe that there was a determination, we have alleged more than ample facts. I got my answer. Okay, thank you. Thank you. Thank you very much. Thank you, Your Honor. Thank you. Good morning. May it please the court, I'm Joseph Aviv, and I'm here today for the defendant appellee talban centers and for the relief defendants. This is a garden variety breach of contract case. I agree with counsel that all this court needs to do and all that the district court did is construe the contract, which is an issue of law, and read the allegations of the complaint. Plaintiff's theory is based that — he claims that talban centers breached its articles of incorporation. And this is a breach of contract case. It's not a breach of fiduciary duties case. It's a breach of contract case. And what is the breach? That the talban family was permitted by the corporation to retain the bulk of their Series B shares that was issued to them by the corporation 20 years ago. And the theory is that the value of the Series B stock is greater than the value of the stock itself, that its value includes the value of the units of partnership interest that the family members separately own in another entity. And this claim is not plausible. It's not even coherent, because what plaintiff's theory would mean is that the stock that the articles required the corporation to issue to the talban family was void on the very day of its issuance in 1998. Because it violated the 550 rule? Right. Because it violated the ownership limit, which is based on the 550 rule. And, Judge Boggs, you were responding to your question. Not only did the SEC not have an issue with these descriptions — and this description is the same description that the company has reported on its Forms 10-K annually for the last 20 years. But there's another agency that hasn't had any problem with this, and that's the Internal Revenue Service. Because if plaintiff's theory is correct, then the REIT rule is being violated, and this company is not a REIT. Now, the claim is refuted by the articles, which set the relative rights, preferences, and limitations of the stock, which it is required to do by the Michigan Business Corporation Act. And not only is there a liquidation preference that's designated, the stock has no right to any of the assets of the corporation. It's not entitled to any dividends or distributions. In other words, the stock does not participate or share in any of the corporation's economic value. But why does the charter then use the words market price? I mean, there is — as a matter of just ordinary parlance, we would think about a stock price in various different ways. So one might be, as Mr. Lando says, liquidation value. And another might be the market price. Why does the charter use the word market price and have the board make a determination of the market price if it's not different than the liquidation value? Well, Judge Larson, REITs are very technical animals. And that provision that you're quoting comes directly from the Internal Revenue Code, which provides that stocks should be based on its market price. And what market price means in the articles and in the code is that the value of the stock should be determined by reference to the market. And a market exists for this Series B stock. The market price may be realized through its contractually provided conversion value into publicly traded stock. That's why there is that conversion value to create the market price. And that's what the contract provides. Plaintiff doesn't like that conversion value. He doesn't like 1 to 14,000. He has his own conversion. And his conversion ratio is 1 to 1. But that's not what the articles say. And the plaintiff's theory... The market value is because the articles state what the value is. It's not based on a trading amount, a figure, or anything like that. The articles say that it can be converted to the common price, to the common shares. So the common shares have a market price. To determine the market price of the Series B shares, you take the common shares price, which fluctuates with the market, and you divide by 14,000. If you divide by that, it's effectively nominal. It's effectively nominal. Let me ask you this. If it were 51% rather than 30%, would that make any difference? That is, I would think, in a real-world sense, I would pay a good bit for the Series B shares, and legally, because your theory is they're not stapled together, legally I could buy those Series B shares alone and then exercise control, even though I don't get any of the asset value. Is that a fair question? It is a fair question, and that is essentially what plaintiff argues. But the problem with that alternative valuation theory, this control theory, is, number one, you have to put aside the fact that this is a 29% control interest. And what a control interest means is exactly what you're saying. I understand that. That's why I'm asking you, if it were a control interest, would we have a different case? In this particular case, 51% wouldn't do it, because the articles provide that any action, any corporate action, requires two-thirds majority, except for the election of directors, which is plurality. But, you know, 51% won't do it. But putting that aside to electing all my directors would, again, in reality. Except the directors don't have the power to amend the articles. But to do what I want as far as what is this? The underlying thing is 25 shopping centers, right? Yes. But you are correct that 51% may present a different question than 29%, but that's not our facts. But even beyond that, the calculation that's. . . Relating to or attacking or undermining the whole structure of REITs, or at least the possible structures of REITs. I mean, is your company that much different from some other? It is not. Corporate lawyers I know do lots of funny things, but this seems to be the kind of thing that corporate lawyers might do all the time. This particular. . . Voting but non-economic shares. This particular REIT is called an upREIT, which is an operating partnership which is managed by a public corporation. And the public corporation owns the majority of the operating partnership. And Taubman Centers was actually the first upREIT. And it has created an entire industry. And there are many, many, many upREITs out there. As a matter of fact, most real estate REITs are upREITs. And the Internal Revenue Service has looked at this upREIT structure and has never found a problem with it. And all of these upREITs have Series B shares which are given to the owners of the operating partnership. And the Series B shares have nominal value because otherwise the five or fewer rule would be violated. And when you determine the calculation value, and here you have to determine the . . . The short answer is this is a way, let's not say around, but a way of addressing the 550 rule that a lot of people seem to do. I don't want to make you go any further than that, but is that your fair representation? That is my representation. But I want to give some other reasons why the . . . whether it's 29 percent or 51 percent really misses the point. Because the calculation of relative value between the class of stock that the articles require is the value of the class of the series of stock. Not the value of the number of shares held by a particular shareholder. Because if that were the case, then the stock held by one shareholder, the same stock, may have a different value than the stock held by another shareholder. You value the class. You don't value the number of shares held by the shareholders. And for the purposes of the five or fewer rule, while it is true that with a family like the Taubman family, they are deemed to constructively own the stock by each family member, plaintiff doesn't allege, nor could it allege, that this constructive ownership requires the corporation to assume that the family members will vote together as a block. There's no allegation like that, and there can't be an allegation. And in fact, the private letter ruling from the Internal Revenue Service that plaintiff cites at page 28 of its brief says . . . rules . . . this is the service . . . that for purposes of the five or fewer rule, any premium that may be allocable to an individual's block of stock is determined with reference to the number of shares owned by that individual, without attributing stock from the family members, for purposes of Section 544, which is the constructive ownership rule. So, in that dispute, the taxpayer contended that family attribution, constructive ownership, should not apply to result in a control premium . . . inasmuch as the taxpayer had no economic or other rights in shares held by his family members. And the Internal Revenue Service agreed with the taxpayer and did not apply a control premium. So, you have to look at every single member of the Taubman family to determine what their stock is and what their number of stock is. And it's not going to be 29 percent. It's going to be much, much smaller. And you can't use the constructive ownership provision . . . Are those relative proportions in the record anywhere? They are in the 10-Ks, which are referred to in the pleading. But, let me give you what I think is the most cogent reason why a control premium, a one-to-one ratio, doesn't make any sense. And that's it because it would create, I think, an absurd Catch-22. If the stock is worth more, based on a control premium, the stock that created the premium would become void. What plaintiff urges is that the Taubman family . . . We just heard it this morning. The Taubman family Series B stock, because of its voting power, should be valued at approximately 30 percent of the corporation's outstanding stock. And that's why in his amended complaint, plaintiff asks the court, and I quote, to reduce the Taubman family's holdings from 30 percent to 8.23 percent. In other words, 22 percent. Reduce it. So that 22 percent, that control premium, will make . . . will void the stock over which the premium was added. So why would anyone, anyone in a REIT situation, pay a control premium for a block of stock if under the ownership limit, the acquisition of that control would void the stock? It just isn't coherent. And the construction of this . . . of the articles that plaintiff asks this court to adopt would make the articles inherently contradictory. Because one provision of the article says that the corporation must issue to each unit holder one share of Series B preferred stock for each unit. So that's an obligation. On the other hand, his interpretation would be that the value of that stock that it must issue is in excess of the ownership limit, and therefore it's void. So the articles require the corporation, under his interpretation, to issue stock that on the day of its issuance is void. And this court has said many times that you read contract provisions harmoniously. You don't go to find conflicts in contract provisions. And the second theory that plaintiff uses to value it, the stapling theory . . . . . . versus what the articles provide. And his theory of value is the control premium that I just spoke about and the stapling theory. And what he says in paragraph 39 of his complaint is, and I quote, Plaintiff is wrong. He's just wrong. And for several reasons. Number one, there is no authority in the tax code. There is no authority in the regulations for the proposition that a REIT must value its stock based on interests that are owned not by the REIT, but by shareholders. Not by the corporation itself, but by its shareholders. And one thing that demonstrates that, and we get this from the articles. One simple thing demonstrates that these shares are not stapled interests as defined in the code. Is that if the corporation is required to void a shareholder's Series B stock because it is in excess of the ownership limit . . . What happens is that the Series B shares become excess. The corporation gets back the Series B stock. But the shareholder retains his or her TRG units. If they were stapled, they would both go back to the corporation. Here, the shareholder retains the TRG units. And stapled doesn't mean that somebody took a stapler and stapled these two instruments. It's a very technical term. And the code only uses the term, stapled interests, as an internal term in the definition of stapled entities. That's the key, stapled entities. And stapled entities are two or more entities that have more than 50 percent common ownership. The corporation and TRG cannot possibly be stapled interests because plaintiff alleges in the complaint . . . that the Taubman family does not own 50 percent of either entity or certainly not of both entities. So, they can't be stapled entities. And most important, and I see my time is up, the value . . . the article measures the values of the outstanding capital stock of the corporation . . . which is defined as the common stock and the preferred stock of Taubman Centers . . . not the value of the corporation stock in a shareholder stock in another entity. So, what plaintiff is doing, he wants you to read words into the articles that simply are not there. Thank you. Thank you very much. Any rebuttal? Yes, Your Honor. If I may very quickly, two quick points. First, I agree 100 percent with my colleague that you have to read these . . . whether it be a statute or a charter contract as a whole. That works in our favor because what they are saying is that although the charter expressly . . . the board to determine in good faith, that it is nonetheless controlled automatically . . . by the purely nominal conversion or liquidation values that are set forth in the charter itself. That is the fundamental flaw in their reasoning. Once you understand that those two things are different, one is decided in the terms of the charter . . . the other is assigned to the board to determine in good faith. And, we are here in a 12B6 motion where we have made factual allegations that give rise to the inference . . . that these are not in good faith. We may win or we may lose in the district court in trying to prove that any such determinations are not in good faith. And, I think a lot of this back and forth, a lot of the questions that were just . . . answers that were just given by my friend, like to Judge Baugh's question about the structure of REITs . . . and how much this will affect and everything. Those can be worked out in determining whether or not this was in fact a good faith market price determination by the board . . . if any such determination were in good faith. Our problem is we were dismissed on 12B6 before we got in the door . . . because the district court erroneously conflated the market price determination that is assigned to the board . . . Does that theory mean that even if your theory is completely cockamamie and, you know, contradicted by law . . . you should still get sent back because maybe their theory is not right? Yes, Your Honor. We do not have the burden of showing that our valuation theory is . . . What the right valuation is. We just want to live to fight another day. You always do on appeal. No, no, no, but . . . Not just that their theory is . . . We happen to think that our theory is correct, as reflected in what they said. But, the point is our complaint still states a viable claim here . . . even if our valuation theory is not correct, that theirs is not in good faith. Even if we are wrong on the staple, you could still assign some . . . We have a fallback theory, which is to assign some valuation to these control . . . to these voting shares. Give them 30% of the voting and the ability to nominate four of the nine board of directors. They are saying that that is . . . That clearly changed the result of this past election for the board of directors . . . because we got a majority of the non-Talban vote. To say that that is purely nominal as a matter of law, is just wrong. And, all we want to do . . . Again, we are here on 12b-6. There could be an argument. The same kind of discussion you had back in . . . And, you had a close election and that tipped it. Right? That is certainly true. But, the question is what is the value of the . . . Do we have a plausible claim that the value of the preferred stock . . . If they . . . Depending on the votes of all these other people, the value would rise. Or, if there is a control premium and that is what we should think about . . . Wouldn't it rise or fall by how good your voting is with everybody else? Because, if you are going to lose anyway . . . Your Honor, I think these questions can all go into the determination . . . The question whether or not there has been a good faith valuation by the board. That is the only question. Again, we may not win on the merits because there may be these other things. Our point is the district court here thought, as a matter of law, that the market price . . . And, I think, frankly, they seem to be advocating this position . . . That the market price is inexorably equal to the liquidation or conversion values. I understand that. Everything seems to hinge on whether there was this good faith determination. Yes. What would you say would constitute a good faith determination? You say that simply putting it in the articles . . . The market price in the articles isn't sufficient. Well, they didn't put it in the articles. They clearly said it goes to the board. Yes, I understand. I understand. So, what would be a good faith determination? What do they need to do? What are you hoping to show in the trial court on renewals? Well, we are hoping to show that they are determined . . . To the extent that they have made determinations, they are insisting that they have and that that is . . . Can you just stop for one minute on that? So, doesn't your amended complaint say the TCO board, the board, touted this alleged advantage . . . that is their 30 percent share, in its proxy materials causing further harm to plaintiffs? So, doesn't that attribute that to the board? The board made that determination? Your Honor, we have argued certainly here in appeal that there has been no determination. Even if you disagree with us and say that there has been a determination . . . Now we are on good faith. Well, yes. I mean certainly, yes. And that is fundamentally the issue here, which is to say they have equated . . . and they continue to this day to equate market price absolutely with the liquidation of conversion value. I hope that the idea of the plane ticket that might have a liquidation or a cash surrender value of a penny . . . doesn't mean that that's the market price. It may not be the full price of a round trip ticket to Hawaii. It may only be $200, especially depending on the limitations. But we are here on a 12B6. Is it correct, counsel, then under this theory, though, that they have been violating the charter from day one? You know, not necessarily, I guess. I mean they could try to defend that. I mean they certainly from day one . . . Under your theory, I mean not just your theory, there is nobody that says that they have ever determined a fluctuating market value. I think that is certainly true, but let me . . . To the extent that that . . . the seeds of your question might include a statute of limitations kind of issue. They certainly may . . . Okay, I don't want to be overly defensive on that, but I certainly want to make sure that . . . You know, just in terms of reasonableness of the statement, there is not something new that happened . . . whenever L&B or Carl Icahn bought shares. Their fault is in not determining a market value that is different from these two theories. Yes. Is that fair? Yes. Yes, that is fair. I'm not making a litigation point. No, no, no. I'm making a practical point that if they have failed or committed an evil, it is in not somehow, somewhere, sometime . . .  Is that . . . I think that is true. Let me just underscore that the definition of market price is as determined in good faith on the relevant date. Surely there have been lots of relevant dates. Right. They filed a 10-K every year. Exactly. And so, that's our point that from a statute of limitations perspective, this doesn't mean that we have to go back to 98 and all that. I want to wrap up there. We've gone way, way over. And I apologize, Your Honor. Again, we ask this Court to remand this case so at least we can try to put forth evidence that the issues that have been discussed here this morning about what the proper valuation should be and whether that was in good faith can actually be decided. And that the District Court pre-termitted that inquiry by simply equating market price, capital M, capital P, with the nominal liquidation of conversion values. Thank you. Thank you very much. The case is submitted. Thank you.